IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PLAYBOY ENTERPRISE, INC. et al, )
)
Plaintiffs, )
v. ) Civil Action No. 1:14-cv-993-TSE-TRJ
)
PLEASUREPLAYMATES.COM, )
)
Defendant. )
)

**REPORT AND RECOMMENDATION**

This matter is before the court on plaintiffs Playboy Enterprise, Inc., and Playboy Enterprises International, Inc.'s (together "Playboy") motion for default judgment (no. 9) against defendant domain name <pleasureplaymates.com>. Playboy seeks *in rem* injunctive relief in the form of a transfer of defendant domain name into the ownership and control of Playboy. *See* Compl., No. 1.

On August 4, 2014, Playboy filed a complaint alleging that defendant domain name is involved in unlawful cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Playboy then sent copies of the complaint by First Class Mail and email to all known physical and electronic addresses associated with the defendant domain name and its registrant pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa). Winchester Decl., No. 4-1. On August 8, 2014, Playboy filed a motion for an order allowing service by publication, which this court granted on August 12, 2014. Nos. 3, 5. Pursuant to the August 12 order and 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb), Playboy was required to publish a copy of the order in *The Washington Times* once within fourteen (14) days of its entry. The

order stated that any answer or response to the complaint was due within twenty (20) days of the date of publication in *The Washington Times*. Accordingly, on August 22, 2014, Playboy timely published notice of this action in *The Washington Times*. Cummings Aff., No. 6.

No answer or other pleading was timely filed in response to the complaint and, on September 18, 2014, the Clerk entered default. No. 8. Upon consideration of Playboy's motion and the memorandum in support thereof, the magistrate judge makes findings as follows and recommends that default judgment be entered in Playboy's favor against defendant domain name <pleasureplaymates.com>.

## Fact Summary

The following facts are established by the complaint and by Playboy's affidavit in support of default judgment.

Playboy is an international multimedia entertainment company that publishes a monthly men's magazine bearing the same name.[1] Compl. ¶¶ 2, 10, 21. First published in December 1953, the magazine features photographs of female models referred to as "Playmate of the Month" or "Playmate of the Year" in its centerfold section. Compl. ¶¶ 10, 21. As of December 31, 2013, Playboy's global sales totaled approximately 2.1 million copies per month. Compl. ¶ 21.

In 1961, Playboy first registered the trademark PLAYMATE (U.S. Reg. No. 0,721,987). Compl. ¶13, Ex. C. Since then, it has acquired an extensive family of trademarks and service marks composed of or featuring the PLAYMATE mark in connection with its female models and their appearances at public events and within various multimedia platforms. Compl. ¶ 13-14. In

---

[1] Playboy Enterprises, Inc., is the indirect owner of the stock of Playboy Enterprises International, Inc., and both are Delaware corporations with their primary place of business in Beverly Hills, California. Compl. ¶¶ 7-8.

total, Playboy owns over 900 registrations for PLAYMATE worldwide and has spent millions of dollars advertising, promoting, and developing its mark throughout the world, including Canada. Compl. ¶¶ 15, 19.

Playboy markets its PLAYMATE mark through licensing initiatives, magazine articles, videos, movies, websites, and merchandise accessible through print media, mobile devices, television networks, and radio and social networks. Compl. ¶¶ 18, 22. Playboy's licensed products generate $1 billion in annual retail sales and include men and women's accessories and apparel, home furnishings, and lifestyle and entertainment products. Compl. ¶ 26. The magazine *Global License!* ranked Playboy 56th among the top 150 global licensors, factoring the PLAYBOY mark as one of its key licensing properties. Compl. ¶ 26. Through licensing agreements, its PLAYBOY and PLAYMATE brands appear on consumer products in retail stores and entertainment venues in more than 150 countries. Compl. ¶ 12.

Playboy also registered PLAYMATE in connection with online computer services, "namely, providing an on line service featuring adult-themed discussions, images of female models, and news" (U.S. Reg. No. 2,191,054) and online entertainment services, "namely providing adult programming via wireless services" (U.S. Reg. No. 3,115,166). Compl. ¶ 22, Exs. D, F. Playboy also features Playmate models on its subscription-based and free content distribution websites. Compl. ¶ 22. In April 2013, the website <playboy.com> received over 17 million unique visitors. Compl. ¶ 23. In 2014, Playboy launched the website <playmates.com> featuring Playmate models, a link to buy PLAYMATE branded products, and an online form for booking appearances by Playmate models at special events. Compl. ¶ 20. In its first month of operation, the website received 1.3 million unique visitors. *Id.*

P.P. Inc., located in Alberta, Canada, registered the defendant domain name <pleasureplaymates.com> on April 25, 2009.[2] Compl. ¶ 9, Ex. B. The domain name hosts a website advertising escort services under the business name Pleasure Playmates, Inc. Compl. ¶ 30, Ex. J. The website depicts escorts, which it refers to as "Playmates," in lingerie or fully nude with the term "Playmate" repeated several times throughout the website. Compl. ¶ 1, Ex. L. In the past, the website even included an image of an escort reading *Playboy* magazine. Compl. ¶ 1, Ex. A. In the header of each page of the website, the Pleasure Playmates name is prominently displayed in cursive script over photographs of the torsos of female models in lingerie. Compl. ¶ 39, Ex. L.

Playboy asserts that P.P. Inc. intends to take advantages of the association between Playboy models and the PLAYMATE mark and that its use of "playmate" in connection with escort services dilutes and tarnishes the mark and is likely to cause consumer confusion. Compl. ¶¶ 31-33. In support, Playboy alleges its adult content is "classy and sophisticated" and that it carefully selects its models "to embody 'girl next door' appeal in appearance and personality." Compl. ¶ 31. In contrast, escort services are not as popularly accepted as Playboy's services and any such association with the PLAYMATE mark threatens Playboy's commercial viability and damages the goodwill and reputation it has cultivated. Compl. ¶¶ 28, 31.

Playboy has sent several demand letters objecting to P.P. Inc.'s use of PLAYMATE in its domain and business name and requesting the transfer of the defendant domain name to Playboy. Compl. ¶ 34. In lieu of sending a response, P.P. Inc. changed the name on its website to Pleasure

---

[2] As of June 15, 2014, according to defendant domain name's WHOIS registration record, <pleasureplaymates.com> was registered to "P.P. Inc. c/o Dynadot Privacy." Compl. Ex. B. Dynadot Privacy is a proxy service associated with domain name registrar Dynadot, LLC, located in San Mateo, California. Compl. ¶ 9. Subsequent to the filing of the instant action, the registrant transferred the defendant domain name to a different registrar, Register.ca, located in Ontario, Canada, and began using the registrar's privacy service to conceal its name from the WhoIs record. Default Mot. ¶ 4, Ex. A.

Play Dates, Inc., and began referring to its escorts as "Play Dates" instead of "Playmates." Compl. ¶ 34. After Playboy initiated an administrative proceeding against the defendant domain name that was unsuccessful,[3] P.P. Inc. resumed its use of the term Playmates on the pleasureplaymates.com website. Compl. ¶¶ 34, 39.

In the instant action, Playboy requests the court order VeriSign, Inc., to transfer the domain name <pleasureplaymates.com> from its current registrar to Network Solutions, LLC, which subsequently will register the domain name in the name of Playboy Enterprises International, Inc. Compl. ¶ 42. After the Clerk had entered the default of defendant domain name and before the October 10, 2014 default hearing, the magistrate judge received a letter from K. Melnyk, manager of Pleasure Playmates, Inc., dated October 7, 2014 (no. 13). The magistrate judge treated the letter as a motion, continued the default hearing to November 21, 2014, and ordered Pleasure Playmates, Inc., to file and serve a motion showing why default should be set aside accompanied by a proposed answer to the complaint not later than November 3, 2014. No. 16. To date, neither the registrant nor any other potential interested party has sufficiently responded to this lawsuit.[4]

### Jurisdiction and Venue

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"). There is *in rem* jurisdiction over the defendant domain name pursuant to 15 U.S.C. § 1125(d)(2)(A), as the defendant domain name violates Playboy's trademark and Playboy

---

[3] After the administrative proceeding, P.P. Inc. was ordered to transfer to Playboy two different domain names, <hushplaymates.com> and <callplaymates.com>. Compl. Ex. K.

[4] On November 5, 2014, the magistrate judge reviewed a letter dated October 31, 2014, from "management" of Pleasure Playmates, Inc., (no. 18) and found that the letter failed to comply with the order entered October 10, 2014. No. 17.

cannot obtain personal jurisdiction over the registrant, who appears to be located outside of the United States and does not appear to have sufficient contacts to confer jurisdiction. Venue is proper pursuant to 15 U.S.C. § 1125(d)(2)(A) and (C) because the registry for the defendant domain name, VeriSign, Inc., is located within this court's judicial district. And, as described above, Playboy has properly perfected service by complying with all of the requirements set forth in 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb).

### Standard

Default judgment is appropriate if the well-pled allegations of the complaint establish plaintiff's entitlement to relief and a defendant—or, here, a registrant of the defendant domain name—has failed to plead or defend within the time frames contained in the rules. *Music City Music v. Alfa Foods, Ltd.,* 616 F. Supp.1001, 1002 (E.D. Va. 1985); Fed. R. Civ. P. 55. By defaulting, a defendant or registrant admits plaintiff's well-pled allegations of fact, which then provide the basis for judgment. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). *See also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing *Ryan*); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting factual allegations in complaint); *Marion County Court v. Ridge*, 13 F.2d 969, 971 (4th Cir. 1926) (default admits well-pled facts). Because the registrant has defaulted, the facts set forth in plaintiff's complaint are deemed admitted.

### Discussion and Findings

The magistrate judge finds that Playboy's well-pled factual allegations establish that defendant domain name was unlawfully involved in cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act 15 U.S.C. § 1125(d)(1)(A). Accordingly, the

6

magistrate judge finds that Playboy is entitled to the sole relief requested, the transfer of the defendant domain name to Playboy.

In order to establish an anticybersquatting violation, the owner of a protected mark must allege that the individual "(i) has a bad faith intent to profit from that mark . . . ; and (ii) registers, traffics in, or uses a domain name that— (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A); *see Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264 (4th Cir. 2001). Therefore, the court should apply this two prong test to the facts presented to determine whether the defendant domain name violates Playboy's rights under the ACPA.

As a preliminary matter, Playboy is the owner of a protected, distinctive mark. The registration of the PLAYMATE mark constitutes *prima facie* evidence of its validity and Playboy's ownership. 15 U.S.C. § 1057(b). It is also *prima facie* evidence that the mark is descriptive and has acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Further, Playboy has used the PLAYMATE mark continuously in interstate commerce in connection with its goods and services since at least 1961 and has spent substantial sums advertising the mark, which has become well-known among members of the purchasing public as an indicator of the goods and services offered by Playboy.

Further, the defendant domain name is confusingly similar to Playboy's distinctive PLAYMATE mark. Defendant domain name incorporates the PLAYMATE mark in the plural form combined only with the generic word "pleasure." This combination fails to distinguish the defendant domain name from Playboy's registered mark. *See Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008). Further, the similarity of service provided by the registrant increases the consumer confusion caused by the similarity of the

7

defendant domain name to the PLAYMATE mark. For these reasons, the undersigned magistrate judge recommends a finding that the defendant domain name is confusingly similar to Playboy's distinctive PLAYMATE mark.

As to the remaining factor, whether the defendant domain name was registered with a "bad faith intent to profit" from the PLAYMATE mark, courts consider a non-exhaustive list of nine factors pursuant to 15 U.S.C. § 1125(d)(1)(B)(i). *See Venetian Casino Resort, LLC v. Venetiangold.Com*, 380 F. Supp. 2d 737, 740 (E.D. Va. 2005). The relevant portion of the statute reads as follows:

> A court may consider factors such as, but not limited to—
> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; . . .
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; . . . and
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). For at least the following reasons, the magistrate judge recommends a finding that the defendant domain name was registered with bad faith intent to profit from the PLAYMATE mark.

First, Playboy has exclusive rights in the PLAYMATE mark and the registrant of the confusingly similar domain name has no trademark or other intellectual property rights in the defendant domain name and did not conduct business as Pleasure Playmates prior to registering

8

the defendant domain name. Second, Playboy has used the mark for over sixty years and the registrant's prior use did not begin until 2009, long after Playboy had established rights in the mark. *International Bancorp v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco*, 192 F. Supp.2d 467, 486 (E.D. Va. 2002) (finding trademark holder's use of "Casino de Monte Carlo" mark for over 140 years precluded junior user from establishing prior, bona fide use in domain names incorporating mark).

Third, the registrant uses the defendant domain name to advertise services confusingly similar to those of Playboy, refers to its escorts as "Playmates" throughout its website, and has in the past incorporated images of its Playmate escorts holding copies of *Playboy* magazine. This creates a significant likelihood of confusion regarding a potential association or endorsement between defendant domain name and Playboy's company. Given the widespread fame of Playboy's mark, and the lack of a bona fide prior interest by the registrant, it is plain that the defendant domain name was registered with the intent to divert Playboy's customers and other internet users to the defendant domain name's websites. For these reasons, the magistrate judge recommends a finding that the registrant of the defendant domain name has acted with a bad-faith intent to profit from Playboy's reputation and brand recognition without Playboy's authorization.

Based on the foregoing, the magistrate judge finds that the requisite standards are satisfied and that defendant domain name <pleasureplaymates.com> violates Playboy's rights under the ACPA. In an *in rem* cybersquatting action, Playboy's remedies are limited to either the transfer of the domain name to the owner of the mark or the forfeiture or cancellation of the domain name. 15 U.S.C. § 1124(d)(2)(D)(i); *see Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610 (E.D.Va. 2003) (discussing a court's power to transfer or cancel a domain

when the location of the registry is within that judicial district). Here, the domain name's registry, VeriSign, Inc., is located within this judicial district and Playboy has properly perfected service under the ACPA. Accordingly, the magistrate judge finds that Playboy is entitled to the transfer of the defendant domain name <pleasureplaymates.com> into the exclusive ownership and control of Playboy.

### Recommendation

The magistrate judge recommends that default judgment be entered against defendant domain name <pleasureplaymates.com> in favor of Playboy and that ownership and control of defendant domain name be transferred to Playboy.

### Notice

Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

_____
Thomas Rawles Jones, Jr.
United States Magistrate Judge

December 23, 2014
Alexandria, Virginia